**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

KENNETH KNIGHT,

     Plaintiff,

vs.                                                     CASE NO. CV-99-J-2599-J

THE PAUL REVERE LIFE INSURANCE
COMPANY,

     Defendant.

ENTERED

NOV 1 6 2000

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary

judgment (doc. 23), to which the plaintiff filed a response ("plaintiff's response").

Thereafter, the defendant filed a reply to plaintiff's response.

### I. Procedural History

The plaintiff, a chiropracter, commenced this action on August 30, 1999, by

filing a complaint in the Circuit Court of Marion County alleging that the defendant

have refused to pay plaintiff's claim for insurance benefits under a disability policy

he purchased in March, 1985.  Complaint at ¶¶ 4-6, 9, 13.  The defendant removed

this case to the United Stated District Court for the Northern District of Alabama on

September 27, 1999 (doc. 1), based on diversity of the parties and the amount in

controversy being greater than $75,000.00.  *See* 28 U.S.C. § 1332.



The complaint states claims for breach of contract (Count I); bad faith (Count II); fraudulent suppression (Count III); fraud (Count IV) and "27-14-19" (Count V). Count V and the individual defendant, the agent who sold the policy in question were dismissed by previous court orders (docs. 10, 12, 13).

The defendant's motion for summary judgment addressed only Counts II, III and IV of the complaint. The plaintiff then filed a motion to amend complaint on October 2, 2000, to add a claim to Counts I and III of the complaint that the defendant suppressed that the plaintiff's application for "own occupation" coverage was denied (doc. 30). The court denied the motion to amend (doc. 31). The plaintiff conceded in his response to the defendant's motion for partial summary judgment that the defendant is entitled to summary judgment on Counts II and IV of the plaintiff's complaint. The court shall so order. Therefore, the sole count on which the defendant has moved for summary judgment which is still pending before the court is Count III, alleging fraudulent suppression in regard to definitions applied by the defendant to "regular occupation" and "gainful employment" as well as "own occupation."[1]

---

[1]The defendant argues that the plaintiff never plead this particular claim of suppression. Defendant's response at 2. In fact, the court recognizes that the facts plaintiff alleges support his claim of fraudulent suppression were the subject of the motion for amended complaint the court denied in October, 2000. However, having reviewed the facts alleged by the plaintiff in his original complaint, the court finds they could, arguably, include the plaintiff's claim that the defendant fraudulently suppressed that his policy did not include "own occupation" coverage. As such, the court will address the merits of this claim.

2

## II.  Factual Background

In the light most favorable to the plaintiff, the undisputed facts of this case are as follows:

The plaintiff is a chiropractor.  Plaintiff depo. at 25-26, 29, submitted as Exhibit A to defendant's submission of evidentiary materials (doc. 24).  He signed an application to purchase a disability policy from the defendant in March, 1985. Plaintiff depo. at 49-52;  exhibit 2 to plaintiff depo.; plaintiff's affidavit at 1.  The policy for which he applied and purchased was for basic coverage only.  Miller Williams affidavit at ¶¶ 6, 8, submitted as Exhibit B of defendant's evidentiary submissions.  This policy was issued March 6, 1985.  Exhibit 1 to Williams' affidavit. The benefits of this policy are $1,000.00 per month after a thirty day waiting period with benefits continuing until age 65.  *Id.*  The plaintiff admits he reviewed the application for this policy before signing it.  Plaintiff depo. at 52-53.  The plaintiff paid two months' premiums at the time he applied for the policy and authorized the defendant to debit his checking account for the monthly payments thereafter.  *Id.* at 53-54; plaintiff's affidavit at 1, Williams' affidavit at ¶ 9 and exhibit 9 thereto.  He

3

saw where this premium payment was deducted from his account each month.[2] Plaintiff depo. at 61.

The plaintiff states he never received an April 10, 1985, letter from Miller Williams, the insurance agent, nor did he ever receive the policy itself, which was enclosed. *Id.* at 55-57, 59, 64, 72, 77; Williams' affidavit at ¶ 4 and exhibits 1 and 2 thereto. He further states that if he had received a copy of the policy, he would not have continued the policy. Plaintiff depo. at 64. He alleges that he was under the impression that his policy included "own occupation" coverage and he would not have purchased it if he had known such was not the case. Plaintiff's affidavit at 2.

The plaintiff completed a change application in October, 1985, although he does not remember why he requested this change. Plaintiff depo. at 67-68; exhibit 7 to plaintiff depo.; exhibit 10 to Williams' affidavit; Williams depo. at 25.[3] He testified at deposition that he understands now the purpose of this application was to add an

---

[2] The defendant argues that, based on this fact alone, the plaintiff's claim for fraudulent suppression should be dismissed under the relevant statute of limitations. Defendant's response at 3. However, the court finds an argument that the plaintiff did not discover the defendant's alleged suppression until he filed his claim for benefits in November 1998, in the light most favorable to the plaintiff, could support a finding that this claim is timely. As the court finds that this claim for fraudulent suppression is due to be dismissed on its merits, the court does not address the defendant's statute of limitations argument.

[3] Mr. Williams stated during his deposition that the plaintiff "knew at that time his policy didn't have own occupation coverage because we were applying for it at this particular time." Williams depo. at 25.

4

"own occupation" rider in the amount of one thousand dollars to his policy. Plaintiff depo. at 68-70; Williams' affidavit at ¶¶ 11-12. He does not remember whether he received a copy of this application at the time he signed it. Plaintiff depo. at 70. The plaintiff alleges he was never told whether this application was approved or not approved. *Id*. at 90-93; plaintiff's affidavit at 1. He states he never paid any additional premiums for this rider. Plaintiff depo. at 99-100. Williams states he had no further dealings with the plaintiff after completing the rider application. Williams' affidavit at ¶ 13.

The plaintiff alleges that Williams told him he had "basic disability benefits of a thousand dollars a month beginning with the 31st day of a disability." *Id.* at 72. The plaintiff also alleges he was told the policy included a seven hundred and fifty dollar rider that provided benefits beyond the thousand dollar policy amount and a second seven hundred and fifty dollar amount in supplemental security income which took effect on the three hundred and sixty-sixth day of disability. *Id.* at 73-74. The plaintiff agrees that his premium payments were \$26.49 per month for the policy he purchased. He further understood that, per the proposal, larger monthly premiums were due for the policy he thought he had purchased. However, he states that Mr. Williams told him how much the premiums were and that he would have the additional amounts of seven hundred and fifty dollars coverage. *Id*. at 83, 85-87;

5

exhibit A to plaintiff's affidavit, submitted as exhibit 3 to plaintiff depo.[4] He does not remember any conversation about an "own occupation" rider at that time. Plaintiff depo. at 84.

The proposal plaintiff was provided discusses the additional payment amounts and states: "Your total protection plan $1,750" but also states "This is a proposal. It is not an insurance contract and the actual policy provisions will control." Exhibit A to plaintiff's affidavit.

The plaintiff states Williams told him this policy would pay benefits if he was unable to perform his own occupation and under the regular care of a personal physician. Plaintiff depo. at 74. The plaintiff agrees that in the proposal package he was given by Williams, "total disability" is defined to mean, because of injury or sickness, an individual is unable to perform his own occupation, not engaged in any other gainful occupation and under the care of a physician. *Id.* at 76; exhibit A to plaintiff's affidavit; exhibit 1 to Williams' affidavit. The plaintiff testified he apparently did not review this at the time he purchased the policy. Plaintiff depo. at 77. He further states Williams should have told him he did not have the "own occupation" rider at the time they discussed the proposal. *Id.* at 88-89.

---

[4]The court will refer to the documents collectively submitted as Exhibit A to plaintiff's deposition as "exhibit A."

An underwriter for defendant, Cheryl Akerson, states the "own occupation" rider was rejected because it was submitted on the wrong form. Akerson's affidavit at ¶ 5, submitted as Exhibit C to defendant's evidentiary submissions. *See also* Williams depo. at 30. Williams testified that he did use the proper form and that he has never had a rider rejected because it was sent in to the home office on the wrong form. *Id.* at 32-34. Williams also stated that he was never notified that the rider was rejected because it was on the wrong form. *Id.* at 36.

In December, 1996, the plaintiff submitted a claim form completed by his sister for benefits due to having knee surgery. Plaintiff depo. at 100-102, 109-110; exhibit 8 to plaintiff depo. That claim had the correct policy number and states the monthly amount to be one thousand dollars. Plaintiff depo. at 103; exhibit 1 to affidavit of Jeff Small, submitted as Exhibit D to defendant's evidentiary submissions. The plaintiff received one thousand dollars on this claim. Plaintiff depo. at 103; exhibit 2 to Small affidavit. The claim form signed by the plaintiff of December 12, 1996 shows the monthly amount of his policy with defendant to be $1,000.00. Exhibit 1 to Small affidavit. He states he was told by the company he would receive the additional seven hundred and fifty dollars per month upon his three hundred and sixty-sixth day of disability. *Id.* at 103-104, 108. The plaintiff was confused by this. *Id.* at 108. The

7

plaintiff notified the defendant he returned to work on January 13, 1997.[5]   Exhibit 3
to Small affidavit.

In January, 1998, the plaintiff stopped practicing chiropractry as he was
experiencing  worsening back pain.  Plaintiff depo. at 37-42, 111, 134, 138.  The
plaintiff had been diagnosed as having myofacial pain syndrome and more recently,
as thoracic outlet syndrome.  *Id.* at 120-130; Dr. Lloyd Dyas deposition at 13, 26,
submitted as Exhibit E to defendant's evidentiary submissions.  The condition first
bothered him 1994 or 1995 and consisted of a burning, aching, boring type pain in his
left chest wall, and then his lower neck area and finally, radiating down his spine to
his mid to lower back.  Plaintiff depo. at 120-121; Dyas depo. at 20-21.  Surgery to
decompress the neurovascular bundle is appropriate treatment and such was done in
the plaintiff's case on April 14, 2000.  Dyas depo. at 21-22.  According to Dr. Dyas,
the surgery lessened the plaintiff's pain and he expected the plaintiff's symptoms to
continue to lessen.  *Id.* at 24-25.

The plaintiff worked at Cornerstone, a medical practice management company,
where he was an investor, from January to June, 1998, when the company was sold.
Plaintiff depo. at 139, 147, 151-155.  The plaintiff filed the claim currently in dispute
in November, 1998.  *Id.* at 174; exhibit 11 to plaintiff depo.  His claim included the

---

[5]In this letter to defendant, plaintiff writes "I am proud to have Paul Revere as part
of my disability package."  Exhibit 3 to Small affidavit.

months during which he worked at Cornerstone in an administrative capacity. Plaintiff depo. at 186-187. The plaintiff stated he did not believe this to be a problem because of his belief that if he could not perform his regular job as a chiropracter, the policy would pay. *Id*. at 193-194, 199. However, the application for benefits shows that the plaintiff listed January, 13, 1998 as the "last day worked prior to disability." Exhibit 11 to plaintiff depo.

On March 15, 1998, the plaintiff was sent a letter by defendant stating that the plaintiff's policy required notification about a disabling condition within thirty days of the onset of disability; stating that his occupation at the time of disability was an administrative position with Cornerstone and not that of a chiropractor; and further stating that dates of treatment were needed. Exhibit 12 to plaintiff depo. Further, forms were enclosed for the plaintiff to indicate his duties with Cornerstone. *Id.* In his response to this letter, the plaintiff strongly states he sees no reason to provide the defendant with a description of his duties at Cornerstone as his policy provided that he was entitled to benefits if he was unable to perform his occupation as a chiropractor. Exhibit 13 to plaintiff depo. The defendant began paying the plaintiff disability benefits after April 14, 2000, when he had surgery.

## III. Summary Judgment Standard

9

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita*

10

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir. 1987). "The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case to which the nonmoving party has the burden of proof." *Cornelius v. Town of Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). *See also Weiss v. School Board of Hillsborough County*, 141 F.3d 990, 994 (11th Cir.1998).

11

## IV. Legal Analysis

To establish his fraudulent suppression claim, the plaintiff must show 1) the defendant had a duty to disclose an existing fact; 2) the defendant suppressed this fact; 3) the defendant's suppression induced the plaintiff to act or refrain from acting; and 4) the plaintiff suffered actual damages. *Ford Motor Co. v. Rice*, 726 So.2d 626, 627 (Ala. 1998); *Booker v. United American Ins. Co.*, 700 So.2d 1333, 1339 (Ala. 1997). *See also* § 6-5-102, Ala. Code, 1975 ("Suppression of a material fact which the party is under an obligation to communicate constitutes fraud...."). In the facts before this court, the plaintiff is arguing that the defendant should have told him he did not have coverage for a benefit he never paid for and which was not included in his original policy. The existence of a duty to disclose is a question of law to be determined by the trial judge. *State Farm v. Owen*, 729 So.2d 834, 839 (Ala.1998).

In assessing whether the defendant had a duty to speak, the court must consider 1) the relationship of the parties; 2) the relative knowledge of the parties; 3) the value of a particular fact; 4) the plaintiff's opportunity to ascertain the fact; 5) the customs of the trade; and 6) other relevant circumstances. *Id.* at 842-843. Evaluating these factors, the court finds that the plaintiff holds himself out as an educated individual. While the defendant had superior knowledge as to what coverage the plaintiff covered, this alone does not create a duty in defendant to list everything not included within the

coverage purchased. *See Surrett v. TIG Premier Ins. Co.,* 869 F.Supp. 919, 925 (M.D.Ala.1994) ("Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information"). A party's superior knowledge must be balanced with other considerations, such as the other party's opportunity to ascertain the fact in question. *Owen,* 729 So.2d at 843.

This court finds that, as a matter of law, the defendant was under no obligation to tell the plaintiff he did not have coverage he did not purchase. Even, presuming all of the plaintiff's alleged facts are true, the defendant never suppressed from the plaintiff the fact that he did not have this coverage. The court further finds that the defendant took no action to prevent the plaintiff from discovering he did not have this coverage.

The evidence in this case establishes that the plaintiff purchased basic disability insurance which required him to be disabled from his own occupation and not gainfully employed in another occupation. Plaintiff claims to have believed this policy to include "own occupation" coverage, meaning that if he became disabled from his own occupation, he would be considered disabled for purposes of payment under the policy, regardless of his engagement in other gainful employment. The plaintiff agrees that he completed an application for the purpose of obtaining "own occupation" coverage, but states he was never told whether or not that application was

13

approved. The plaintiff asserts that he believed the original policy to include "own occupation" coverage and also that he believed the October, 1985 rider application to have been approved. The plaintiff admits his premiums never increased beyond the payments for the basic disability policy.

This court finds that the defendant did not suppress any fact from the plaintiff. Clearly, the proposal given to the plaintiff for coverage in March, 1985 defined "total disability" to include that a person is not engaged in gainful employment other than his "own occupation." Although the plaintiff denies ever receiving a copy of his policy, he did have the proposal. The plaintiff agrees that in the proposal package he was given by Williams, "total disability" is defined to mean, because of injury or sickness, an individual is unable to perform his own occupation, not engaged in any other gainful occupation and under the care of a physician. *Id.* at 76; exhibit A; Exhibit 1 to Williams' affidavit. As such, the plaintiff could have learned his policy did not cover "own occupation" as the proposal he did have for him to purchase the policy contained this definition.[6]

The court finds this conclusion bolstered by the plaintiff's application for an "own occupation" rider in October, 1985. Regardless of whether plaintiff ever

---

[6]To rule in favor of the plaintiff on this issue would require this court to hold that an insurer has an obligation to reveal every kind of coverage **NOT** included within a policy of insurance. To impose this responsibility would be highly impractical as well as an invitation to a landslide of future litigation.

14

received notice that this rider was approved or disapproved, the fact of the application should have put the plaintiff on notice that he did not already have this coverage. The plaintiff alleges he would not have purchased the policy in question if he had known he did not have this coverage, but the plaintiff could have discovered he did not have this coverage either from reading the proposal provided to him or by the fact he applied for such coverage seven months after he purchased the policy. Although addressing a different facet of fraud, in *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757, 758-59 (Ala.1983), the Alabama Supreme Court stated that "it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests...."[7]

The plaintiff has presented no evidence to show the defendant foiled his efforts to learn the extent of his coverage, or even that he ever inquired into the extent of his coverage. At the very least, the proposal plaintiff admits he received did not define

---

[7]Although *Torres* was overruled by *Hickox v. Stover*, 551 So.2d 259 (Ala.1989), the Alabama Supreme Court then overruled *Hickox* in *Foremost Insurance Co. v. Parham,* 693 So.2d 409 (Ala.1997), stating, "After careful consideration, we conclude that the 'justifiable reliance' standard adopted in *Hickox*, which eliminated the general duty on the part of a person to read the documents received in connection with a particular transaction (consumer or commercial), should be replaced with the 'reasonable reliance' standard most closely associated with *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757 (Ala.1983)." *Foremost*, 693 So.2d at 421.

15

"total disability" in a manner that would lead the plaintiff to believe he had "own occupation coverage." Further, the plaintiff's October, 1985 application for this coverage should have alerted the plaintiff to the fact it was not included in the original policy. *See Owen*, 729 So.2d at 843 ("State Farm should not be held responsible for Owen's confusion, when the contract language was clear"). As such, this court can find no material fact suppressed by the defendant in regard to "own occupation" coverage.

This court, having considered all of the evidence submitted by the parties, finds that the plaintiff fails in his burden to show any duty to disclose on the part of the defendant, an essential element of the case to which the plaintiff has the burden of proof. *See Cornelius v. Town of Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989).

The defendant's motion for summary judgment on counts II, III and IV of the complaint be and hereby is **GRANTED**. This case shall proceed to trial as scheduled on Count I of the complaint.

**DONE** and **ORDERED** this the ___/ 6___ day of November, 2000.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

16